UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROTECTIVE LIFE INSURANCE
COMPANY,

        Interpleader Plaintiff,        Case Number 20-13289
v.                                              Honorable David M. Lawson

KIRIT PATEL, SANJAY PATEL, ASHA
TAYLOR, DHAVAL TAYLOR, and
SHAKRI TAYLOR,

        Interpleader Defendants.

And

KIRIT PATEL, SANJAY PATEL, and
SHAKRI PATEL,

        Cross-Plaintiffs,

v.

ASHA TAYLOR and DHAVAL TAYLOR,

        Cross-Defendants.

_____/

## ORDER GRANTING IN PART MOTION FOR INTERPLEADER

In this dispute over the proceeds of two insurance policies on the life of Arvindbhai G. Patel, now deceased, stakeholder Protective Life Insurance Company moves the Court for an order allowing it to deposit the policy proceeds into the Court's registry, to withdraw from the lawsuit, and discharging it from all liability arising from the insurance policies. One group of claimants opposes Protective's motion, contending that Protective negligently processed the claim to one — or perhaps both — of the policies over which there is no dispute, and there is no basis for concluding that there were competing claims to the proceeds of either policy. However, those

defendants have not filed any pleading to assert such claims, which in any event are meritless. Both groups of defendants dispute Protective's request for attorney's fees. The motion is fully briefed, and oral argument will not aid in its disposition. Therefore, the Court will cancel oral argument and will decide the motion on the papers submitted. E.D. Mich. LR 7.1(f)(2). Because Protective easily satisfies the requirements for interpleader and is not subject to any proper claim by the parties against it except for the policy proceeds, the Court will grant its motion and allow it to submit additional information to substantiate its attorney's fees request.

I.

During his lifetime, Arvindbhai (Andy) G. Patel purchased two life insurance policies, each with a death benefit of $500,000. One policy was issued by the Federal Kemper Life Assurance Company, and the other by the Empire General Life Assurance Corporation. Through mergers and other transactions, plaintiff Protective succeeded to the interests of both companies and has assumed the obligation to honor them.

A.

Andy Patel purchased the Federal Kemper policy, policy number FK2874760, on October 15, 2000. He designated his spouse at the time, Shakri A. Patel, as the policy's sole beneficiary. Andy and Shakri had two children together, Kirit and Sanjay. However, the couple apparently divorced soon after Andy obtained the Federal Kemper policy, and Andy developed a relationship with another woman, Asha Taylor, with whom he had a child, Dhaval (the Taylor defendants).

After Andy divorced Shakri, he submitted a request to change the beneficiaries under the Federal Kemper policy on June 15, 2001, designating Shakri Patel (ex-wife) to receive 25% of the death benefit; Asha Taylor ("friend") – 25%; Dhaval Taylor (son) – 10%; and Sanjay Patel (son) – 40%. Federal Kemper acknowledged Andy's change of beneficiaries on June 20, 2001.

Andy Patel eventually developed brain cancer sometime around 2015, for which he underwent surgery. While battling brain cancer, Andy submitted another request to change beneficiaries on July 20, 2015, excluding his ex-wife and son, Sanjay, from any policy proceeds and designating Asha Taylor to receive 50% of the death benefit and Dhaval Taylor to receive 50%. Protective acknowledged Andy's beneficiary change on July 27, 2015.

Andy Patel was the subject of a guardianship proceeding in 2016 based on an alleged inability to care for himself. Andy's ex-wife, Shakri, and sons, Kirit and Sanjay (the Patel defendants), believe that Andy lacked the mental capacity to effectuate the beneficiary change, thereby rendering the 2001 beneficiary designation controlling.

B.

Andy Patel purchased the Empire General life insurance policy, policy number E00239924, on March 15, 2002. He designated Asha Taylor, whom he described as his "partner," as the sole beneficiary.

On February 17, 2011, Andy submitted a request to change the beneficiaries on his Empire General policy, excluding Asha and adding his children with Shakri. The beneficiary change form designated Kirit A. Patel (son) as a 50% primary beneficiary, and Sanjay Patel (son) as a 50% contingent beneficiary. Protective denied the request on February 23, 2011, because "[t]he percentage under each beneficiary designation [did not] equal 100%." Andy never submitted another request to change beneficiaries.

The Patel defendants maintain that Kirit and Sanjay are entitled to the proceeds from the Empire General policy because "a representative from the life insurer approved and recorded the change" and Andy's request substantially complied with the policy's ambiguous requirements.

C.

Andy Patel died on July 26, 2020.  On August 13, 2020, Protective sent Kirit Patel a letter informing him that Asha Taylor and Dhaval Taylor were the beneficiaries under Andy's Federal Kemper policy, consistent with Andy's 2015 change in beneficiaries.  In September and October 2020, Protective sent Kirit three requests to provide information on the Federal Kemper policy, despite the fact that Kirit was never actually listed as a beneficiary under the policy (his mother and brother were).

On November 5, 2020, Asha and Dhaval Taylor individually submitted claimant's statements to Protective for their portions of Andy's Federal Kemper policy proceeds.  Protective apparently found those submissions to be defective.  That same day, Asha Taylor submitted a claimant's statement for the total death benefit on the Empire General policy.  The following week, on November 12, 2020, Asha and Dhaval jointly submitted corrected claimant's statements for the Federal Kemper policy after receiving notice that they filled out the witness sections incorrectly.

Four days later, on November 16, 2020, Protective received a letter from Attorney Michael P. Kavanaugh on behalf of Kirit Patel requesting that Protective suspend disbursement of the life insurance funds anticipating a forthcoming lawsuit challenging Andy's capacity to change the beneficiaries of his life insurance policies.  The letter stated:

> Re:   Our client:         Kirit Patel
>       Policy/Contract:    E00239924 & FK2874760
>       Case No.:           0100097463
>
> To Whom It May Concern:
>
> Please be advised that the undersigned has been retained to represent the interest of Kirit Patel in his capacity as a potential beneficiary interest in the above referenced insurance policies.  Please accept this correspondence as notice that a civil action will be commenced in the upcoming days seeking judicial determination of the capacity of the owner of said policies to make/change his beneficiary designations.

- 4 -

> Protective Life Insurance Company will be named as a party defendant and will be served in accordance with the Michigan Court Rules.
>
> At this time, we request Protective Life Insurance Company suspend any distribution from said policy pending final adjudication.

Kavanaugh Letter, ECF No. 9-11, PageID.136.

On November 17, 2020, a Protective claims specialist emailed Dhaval Taylor acknowledging receipt of the Taylors' claims submissions and informed Dhaval Taylor that Protective was "reviewing if there is a competing claim being made against the policy." Dhaval Taylor contacted Protective the following week for a status update, and the claims specialist explained that Protective "received a notice for a competing claimant to at least one of the policies" and was "waiting on a response from [Protective's] legal team." Dhaval Taylor followed up again, asking if he should contact an attorney. The Protective claims specialist responded on November 30, 2020, stating that she "cannot advise [him] on whether or not [he] need[s] counsel" but that "usually [she] send[s] a letter out to each party to advise them of the competing status and see if they can come to a resolution" and that she was "waiting for [Protective's] legal team to confirm if that's the direction [Protective] will go for this or if it needs something different."

D.

Protective filed its complaint-in-interpleader on December 14, 2020, within a month after receiving the Kavanaugh letter, and amended the complaint on January 15, 2021 to add Shakri Patel as an interpleader defendant after discovering that she was not deceased. Protective states that it unsuccessfully attempted to negotiate a stipulation with the defendants to allow it to pay the policy proceeds into the Court's registry and receive a "with prejudice" dismissal from the case. It also asked for a nominal attorney's fee.

At several case management conferences, the Court encouraged the parties to reach an agreement on the interpleader aspect of the case so that the competing claims to the policy proceeds could be adjudicated promptly. The Patel defendants eventually agreed to Protective's request, although they continue to object to Protective's escalating attorney's fee requests (which have increased from $5,000 to, at last filing, $22,141.75). The Taylor defendants are adamant that Protective is neither an innocent nor independent stakeholder, and it should not be absolved of liability for potential breach-of-contract or negligence claims for mishandling the claims procedure. They agree that the policy proceeds may be paid into court, but they oppose all other relief that Protective seeks.

## II.

"Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed. 2001)). Individuals "with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). When interpleader is invoked, the Court may "enter its order restraining [all claimants] from instituting or prosecuting any proceeding in any [state or federal] court" affecting the disputed fund, and ultimately "discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361.

Interpleader actions typically proceed in two stages. First, "the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction

over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *High Tech. Prods.,* 497 F.3d at 641. The second stage deals with the resolution of the competing claims "via normal litigation processes, including pleading, discovery, motions, and trial." *Id.* at 642. That activity will not involve the stakeholder, because after the court finds that interpleader is appropriate, it typically: (a) orders the stakeholder to deposit with the court the fund in the Court's registry; (b) discharges the stakeholder if it is a disinterested party; and (c) enjoins the parties from prosecuting any other proceeding related to the fund. *Id*. at 641-42; *see also* 7 Wright at § 1714. The present motion addresses the first stage.

A.

An interpleader plaintiff must establish the jurisdictional prerequisites "by properly pleading: (1) the existence of actual or potential conflicting claims to a limited fund or property held by the stakeholder; . . . (2) an amount in controversy of at least $500; and (3) minimal diversity among the competing claimants." *Lindenberg v. Jackson Nat'l Life Ins. Co*., 912 F.3d 348, 356 (6th Cir. 2018) (citing 28 U.S.C. § 1335(a); *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967); *High Tech. Prods*., 497 F.3d at 642). Although the parties do not call into question the second and third elements, the Taylor defendants argue that Protective has not established the first requirement because there never were "actual or potential" competing claims to the policy proceeds. They maintain that the Kavanaugh letter was not a valid basis for concluding that there were competing claims to the proceeds of both policies, and if Protective had performed a proper investigation, it should have determined that the competing claimant's positions were meritless.

The Taylor defendants cite no authority to support their argument and the applicable law contradicts it. The Sixth Circuit has made clear that an interpleader plaintiff need only plead "the

existence of actual *or potential* conflicting claims." *Lindenberg*, 912 F.3d at 356 (emphasis added). Protective had no duty "to investigate the competing claims and make a determination regarding the proper recipient of the death benefit" before it brought its interpleader action. *Humana Ins. Co. of Kentucky v. O'Neal*, 727 F. App'x 151, 155 (6th Cir. 2018); *see also Jackson Nat'l Life Ins. Co. v. Poole*, No. 14-1924, 2015 WL 276632, at *4 (M.D. Tenn. Jan. 22, 2015) ("'There is no requirement in Section 1335 that the party filing a statutory interpleader action perform *any* kind of investigation, let alone reach a level of investigation or due diligence that satisfied one of the competing claimants.'").

"'The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder . . . is whether the stakeholder legitimately fears multiple vexation directed against a single fund or property.'" *High Tech. Prods.*, 497 F.3d at 642 (quoting 7 Wright at § 1704). "The Sixth Circuit's requirement of a 'legitimate' fear of overlapping litigation does not imply review of the merits of the adverse claims, which should instead be reserved for the second-stage of interpleader." *Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1240-41 (E.D. Ky. 2011) (citing 7 Wright at § 1704; *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir. 1953) ("In an interpleader action, the jurisdiction of the court is not dependent on the merits of the claims of the defendants")). In fact, the purpose of the interpleader remedy is to relieve a stakeholder of the burden of assessing the merits of the competing claims and avoiding the consequences of a mistaken determination, which could be double liability.

The Taylor defendants insist that there was never a bona fide dispute to at least $175,000 of the Federal Kemper policy proceeds, reasoning that the 2001 change-of-beneficiary form allocated 35% of the $500,000 death benefit to them, and the capacity challenge to Andy Patel only applied to a later beneficiary change in 2015. The Patel defendants seem to acknowledge that

argument. But that concession did not appear in the Kavanaugh letter, which plainly states that Kirit Patel was contesting both policies and he intended to "seek[] judicial determination of the capacity of the owner of *said policies* to *make/change* his beneficiary designations." (Emphasis added). That notice was sufficient to assert a claim against the death benefits from both policies and create "potential conflicting claims" to the fund.

Protective properly has sought relief under the interpleader statutes and rules, even though the Kavanaugh letter purports to be sent on behalf of Kirit Patel only. Kirit Patel's claim is not so baseless as to render Protective's concern of multiple liability fanciful. First, the declaration of a competing claim and the warning by retained counsel of an impending lawsuit within days, at the very least, justifies some concern over double or multiple liability. *High Tech. Prods.,* 497 F.3d at 641; *Lindenberg*, 912 F.3d at 356. Second, although Kirit Patel was not specifically listed as a beneficiary of the Federal Kemper policy, he was listed as a beneficiary in the unsuccessfully modified Empire General policy. Although he raised only a mental capacity argument in his claim letter, he now contends that Andy Patel's 2011 attempt to change the beneficiaries of the Empire General policy substantially complied with the policy's ambiguous requirements. Third, although the letter mentioned that counsel was representing Kirit Patel, Protective was well aware that Kirit's mother and brother were listed on contested versions of both the Federal Kemper and Empire General policies. It is reasonable to infer that Shakri and Sanjay Patel would raise the same claims as Kirit. That is enough to establish actual or potential conflicting claims. "[T]he Sixth Circuit has found this requirement satisfied where multiple claimants present competing claims for the same identifiable products." *Mudd*, 786 F. Supp. 2d at 1241-42 (citing *High Tech. Prods.*, 497 F.3d at 642). "[I]t is immaterial whether the stakeholder believes that all claims against

the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous." 7 Wright at § 1704 (footnotes omitted).

B.

When a court allows interpleader, "it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead." *High Tech. Prods.,* 497 F.3d at 641 (quoting 7 Wright at § 1714); 28 U.S.C. § 2361. The Taylor defendants insist that Protective is not entitled to an injunction barring any further claims against it. They say that the interpleader remedy cannot be used as a shield against Protective's liability for mishandling the claims process, and the insurer has not sought that relief in good faith. The bad faith contention is based on statements in the Taylor defendants' brief that Protective for some reason sought to provoke a dispute among family members over the policy proceeds.

It is true that where a claimant has an independent claim against a stakeholder, interpleader will not shield the latter from liability. Interpleader "was never intended to perform such a function, to be an all-purpose 'bill of peace.'" *State Farm Fire & Cas. Co.*, 386 U.S. at 535. However, the Taylor defendants' argument will not prevent Protective's discharge from this case for several reasons.

First, the Taylor defendants have not pleaded a counterclaim against Protective, despite having the better part of a year to do so. There is no question that they could have pleaded such a claim under "the liberal joinder provisions of the Federal Rules of Civil Procedure." *High Tech. Prods.,* 497 F.3d at 643 (citing *New York Life Insurance Co. v. Connecticut Development Authority,* 700 F.2d 91 (2d Cir. 1983). They have chosen not to do so, despite the Court's suggestions at case management conferences that they should file a formal pleading if in fact they

had a valid claim against Protective, and the compulsory nature of such a counterclaim. *See* Fed. R. Civ. P. 13(a).

Second, it is questionable that the Taylor defendants' cause of action based on Protective's alleged mishandling of the claim procedure would be valid. Some jurisdictions recognize an independent tort action based on an insurer's botched handling of a claim, which gives rise to a controversy over entitlement to insurance proceeds. *See Lee v. West Coast Life Insurance Co.*, 688 F.3d 1004 (9th Cir. 2012). But Michigan courts have repeatedly recognized that plaintiffs may not maintain tort actions arising from the breach of a contractual duty. *See, e.g., Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1956). All of the Taylor defendants' arguments have at their core the idea that Protective failed to pay promptly the insurance benefits to them. And none of those arguments "is truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264-65 (3d Cir. 2009).

Third, the Taylor defendants contend that they should be able to proceed against Protective because of its bad faith in bringing the interpleader action as a means of shielding itself from its negligent claim handling. But Michigan does not recognize tort actions alleging bad-faith breach of an insurance contract. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 423, 295 N.W.2d 50, 56 (1980); *see also Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 402, 729 N.W.2d 277, 286 (2006) ("An alleged bad-faith breach of an insurance contract does not state an independent tort claim."); *Taylor v. Blue Cross/Blue Shield of Michigan*, 205 Mich. App. 644, 657-658; 517 N.W.2d 864 (1994) ("Failure to pay a contractual obligation does not amount to outrageous conduct, even if it is willful or in bad faith. At best, plaintiffs' claim lies in the tort of bad-faith refusal to pay an insurance claim, an action that is not recognized by the courts of this

state."); *Runions v. Auto-Owners Ins. Co.*, 197 Mich. App. 105, 110, 495 N.W.2d 166, 168 (1992) (referring to the "nonexistent tort of bad-faith handling of an insurance claim").

Fourth, if Protective failed to pay the claims promptly, the beneficiaries are consigned to the remedy of "penalty interest" of 12% under Michigan's Unfair Trade Practices Act. *See* Mich. Comp. Laws § 500.2006(4). The Taylor defendants allege that they are entitled to that remedy, but Protective already has stated that it intends to pay interest at a rate of 12% per annum from the date of Andy's death as included in the funds it will deposit into the Court's registry as part of the interpleader order. And again, Michigan courts do not recognize an independent cause of action based on an insurer's bad-faith failure to timely pay a claim. *Young v. Michigan Mut. Ins. Co.*, 139 Mich. App. 600, 605, 362 N.W.2d 844, 846 (1984) (citing *Barker v. Underwriters at Lloyd's, London*, 564 F. Supp. 352 (E.D. Mich. 1983).

The Taylor defendants have not identified a valid reason for refusing Protective's request for a discharge from further liability to the claimants in this case.

C.

Protective asks for attorney's fees for bringing and prosecuting its complaint-in-interpleader. At the beginning of the case, Protective unsuccessfully proposed to the defendants a stipulation to dismiss it from the case, have the Court resolve the interpleader defendants' claims, and award Protective $5,000 in attorney's fees. All defendants initially refused, but in May 2021, the Patel defendants consented to Protective's recovery of its attorney's fees and dismissal with prejudice. However, because of the Taylor defendants' refusal to accept the proposal, Protective says it incurred substantial fees. When Protective filed its motion to disburse the funds in June 2021, it requested fees totaling $16,456.75. It increased its request in its reply brief and now asks

for $22,141.75. The Taylor defendants insist that Protective is not entitled to any fees, and the Patel defendants argue that the fee request of about $16,000 is unreasonable.

Although "[n]either Rule 22 nor the interpleader statute contains an express reference to costs or attorney's fees," "[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so." 7 Wright at § 1719. A court may award an interpleading party attorney's fees and costs when the party "is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Holmes v. Artists Rights Enf't. Corp. (AREC)*, 148 F. App'x 252, 259 (6th Cir. 2005) (quoting *Septembertide Publ'g v. Stein and Day*, 884 F.2d 675 (2d Cir. 1989)). "The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate." *Ibid.*

On the other hand, it has been said that "attorneys' fees are not warranted . . . when a stakeholder's interpleader claim arises out of the normal course of business." *In re Mandalay Shores Coop. Hous. Ass'n Inc.*, 21 F.3d 380, 383-84 (11th Cir. 1994); *see also Unum Life Ins. Co. of Am. v. Kelling*, 170 F. Supp. 2d 792, 795 (M.D. Tenn. 2001) ("Competing claims arise during the normal course of [insurance] business and the cost of doing such business should not be transferred to the insured."); *Allstate Life Ins. Co. v. Shaw*, No. 15-11761, 2016 WL 1640461, at *5–6 (E.D. Mich. Apr. 26, 2016) (collecting cases). The reasons for disallowing attorney's fees (an equitable remedy) include the idea that the task of dealing with competing claims to insurance benefits is a foreseeable risk for insurance companies and an anticipated cost of doing business; an insurance company is an interested stakeholder in a contest over policy proceeds, and the immunity conferred by an interpleader order is remedy enough; and it is inequitable to deplete the

policy proceeds, which an interpleader action is intended to preserve and allocate. *Kelling*, 170 F. Supp. 2d at 794-95.

Had the interpleader request been agreed to at the outset of this case, there would be good reason to follow that reasoning, order payment of the contested funds into court, dismiss Protective with prejudice, and send it on its way with no fee compensation. However, the Taylor defendants' opposition to interpleader has no sound basis in law and has caused Protective to incur unnecessary expenses to obtain what should have been a routine remedy.

On the other hand, the $22,000 plus fee request raises an eyebrow, especially without any backup data. The action is relatively straightforward, and although the parties engaged in negotiations and three status conferences, little discovery has been conducted.

Typically, the reasonableness of an attorney's fee request is measured by the lodestar method. *NE. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 702 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). That cannot be done here because Protective has not submitted any information showing the itemized time spent on the case or any data for assessing a reasonable hourly rate for the lawyers who worked on the case. Protective will have to furnish the missing information before a fee determination is made. Protective should identify the actions it took in this case both before and after the Patel defendants stipulated to the relief requested so that the Court can allocate the responsibility for the payment of fees among the interpleader defendants.

III.

Interpleader plaintiff Protective Life Insurance Company has established the requisites for interpleader and for obtaining a discharge from further liability in the case. It must furnish more information to substantiate its request for attorney's fees.

Accordingly, it is **ORDERED** that the motion for interpleader (ECF No. 19) is **GRANTED IN PART**.

It is further **ORDERED** that Protective Life Insurance Company must pay into the Court's registry the death benefit proceeds from insurance policies FK2874760 and E00239924 on the life of insured Arvindbhai G. Patel, plus simple interest at the rate of 12% per annum from July 26, 2020 (the date of death) through the date the funds are received by the Clerk of Court.

It is further **ORDERED** that upon payment of the funds, Protective Life Insurance Company shall be relieved fully of and discharged from any and all liability with respect to payment of the life insurance proceeds of said policies of insurance.

It is further **ORDERED** that the defendants are enjoined and restrained from instituting any other action in any state or United States court against Protective Life Insurance Company related to the recovery of the insurance benefits or any portion thereof, plus any applicable interest, payable as a consequence of the death of Arvindbhai G. Patel.

It is further **ORDERED** that the interpleader defendants and all other persons who claim an interest in the proceeds of said life insurance policies must file their claims in this matter **on or before September 28, 2021**.

It is further **ORDERED** that if Protective Life Insurance Company intends to seek an award of attorney's fees and costs, it must renew its request with proper documentation **on or before September 21, 2021**.

It is further **ORDERED** that oral argument on this motion previously scheduled for September 7, 2021 is **CANCELLED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: September 7, 2021