UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROTECTIVE LIFE INSURANCE
COMPANY,

            Interpleader Plaintiff,            Case Number 20-13289
v.                                                                             Honorable David M. Lawson

KIRIT PATEL, SANJAY PATEL, ASHA
TAYLOR, DHAVAL TAYLOR, and
SHAKRI TAYLOR,

            Interpleader Defendants.

And

KIRIT PATEL, SANJAY PATEL, and
SHAKRI PATEL,

            Cross-Plaintiffs,

v.

ASHA TAYLOR and DHAVAL TAYLOR,

            Cross-Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT BY INTERPLEADER
DEFENDANTS ASHA AND DHAVAL TAYLOR**

In September of last year, the Court permitted stakeholder Protective Life Insurance Company to interplead the proceeds of two insurance policies on the life of Arvindbhai G. Patel, now deceased. After Protective deposited the policy proceeds into the Court's registry, it was allowed to withdraw from the lawsuit and was discharged from all liability arising from the insurance policies. Now before the Court is a motion by interpleader defendants Asha and Dhaval Taylor for summary judgment on their cross claim for the proceeds of the two insurance policies.

There is no genuine issue of material fact that the Taylors are entitled to the proceeds of one of the policies (the Empire General policy). Fact issues preclude summary judgment as to the other policy (the Federal Kemper policy).

I.

Arvindbhai (Andy) G. Patel lived an interesting life. Born in India, he emigrated to the United States with his wife, Shakri Patel. Andy and Shakri had four children, including Kirit and Sanjay Patel, who are parties to this litigation. Although Andy and Shakri divorced in October 2000, they continued to live together off and on as husband and wife. Yet even before the divorce, Andy entered a long-term relationship with interpleader defendant Asha Taylor, whom he met on one of his many trips back to India. Andy helped Asha emigrate to the United States, where she worked at several of Andy's franchise businesses and ultimately became the owner of a hotel in White Lake, Michigan. Andy and Asha had a son, interpleader defendant Dhaval Taylor. Andy lived with Asha at her hotel on-and-off, as well as with his son, Kirit Patel, until he and Kirit had a disagreement in mid-2012. *See* Settlement Agreement, ECF No. 52-1, PageID.716; Kirit Patel Dep., ECF No. 52-2, 719-22. Andy also spent significant amounts of time in Kentucky and traveling elsewhere.

During his lifetime, Andy Patel purchased two life insurance policies, each with a death benefit of $500,000. One policy was issued by the Federal Kemper Life Assurance Company, and the other by the Empire General Life Assurance Corporation. Through mergers and other transactions, interpleader plaintiff Protective Life Insurance Company succeeded to the interests of both companies. Andy made multiple changes to the beneficiaries of the policies, giving rise to the present dispute.

A. Insurance Policies

1. Federal Kemper Policy

Andy Patel purchased the Federal Kemper policy number FK2874760 on October 15, 2000. He designated his spouse at the time, Shakri Patel, as the policy's sole beneficiary. On June 15, 2001, after Andy divorced Shakri, he submitted a request to change the beneficiaries under the Federal Kemper policy, designating Shakri (ex-wife) to receive 25% of the death benefit; Asha Taylor ("friend") — 25%; Dhaval Taylor (son) — 10%; and Sanjay Patel (son) — 40%. Jun. 2001 Beneficiary Change, ECF No. 9-3, PageID.94. Federal Kemper acknowledged Andy's change of beneficiaries on June 20, 2001.

Andy was diagnosed with brain cancer in 2013, as discussed further below. While battling cancer, Andy submitted another request to change beneficiaries, excluding his ex-wife and son, Sanjay Patel, from any policy proceeds. Instead, he designated Asha Taylor (girlfriend) to receive 50% of the death benefit and Dhaval Taylor (son) to receive 50%. Jul. 2015 Beneficiary Change, ECF No. 9-4, PageID.97. Andy submitted the beneficiary change request on July 20, 2015, and Protective acknowledged the change on July 27. The Patel defendants challenge Andy's mental capacity to make this change.

2. Empire General

Andy Patel purchased the Empire General life insurance policy number E00239924 on March 15, 2002. He designated Asha Taylor, whom he described as his "partner," as the sole beneficiary. The policy provided that Andy could change any beneficiary during his lifetime. It stated that, "[t]o make a change, the Company must receive a written request satisfactory to the Company at its Home Office. Any such change will take effect as of the date the request is signed, even if the Insured dies before the Company receives it." Resp., ECF No. 51, PageID.611.

Insureds could make beneficiary changes by submitting a change of beneficiary form. The form specified that "all previous beneficiary designations and directions for settlement of this policy be cancelled" upon submission of the form. Feb. 2011 Beneficiary Change, ECF No. 9-6, PageID.106. It further directed that percentages be used to indicate "how proceeds are to be paid" if "more than one primary beneficiary is named." *Ibid.*

On February 17, 2011, Andy submitted a request to change the beneficiaries on his Empire General policy, excluding Asha and adding his children with Shakri. The beneficiary change form designated Kirit A. Patel (son) as a 50% primary beneficiary, and Sanjay Patel (son) as a 50% contingent beneficiary. The form was signed by Protective's Vice President but not by a registrar. Protective denied the change request on February 23, 2011, because "[t]he percentage under each beneficiary designation [did not] equal 100%." Feb. 2011 Denial, ECF No. 9-7, PageID.109. Protective sent Andy another change of beneficiary form, but Andy never returned it. Protective again sent a change of beneficiary form on September 17, 2018, in response to a request by Andy or someone acting on his behalf. Andy also failed to return that form and apparently made no other request to change beneficiaries. After Andy died, Protective launched an internal investigation and concluded that the 2002 beneficiary form naming Asha Taylor beneficiary was controlling.

B. Cognitive Decline

Andy Patel often received medical care in India. During an annual appointment at Apollo Hospital in Gujarat in October 2013, Andy learned that he had a brain tumor. He underwent brain surgery in India soon thereafter.

In the spring of 2015, and with the help of a licensed attorney, Andy Patel engaged in business negotiations regarding the lease of a 7-11 store and the refinancing of a hotel. The record

suggests that Andy continued to engage in these negotiations until at least July 6, 2015, two weeks before he requested to change the beneficiaries of his Federal Kemper life insurance policy. Then, on July 29, 2015 — nine days after requesting the beneficiary change — Andy entered a CVS pharmacy in White Lake and attempted to purchase pain killers that he could use to commit suicide. He told police officers he believed his suicide would convince his son, Dhaval Taylor, to seek medical treatment he had refused for a football injury. Police were called to the CVS and emergency medical personnel brought Andy to the Huron Valley hospital emergency room. The EMS report listed Andy as a danger to himself or others and that Andy told the emergency department, "I am crazy," and, "I want to kill myself." Hospital staff filed a Petition for Hospitalization on this basis.

Andy was admitted to the emergency room. Treatment notes state that Andy was "awake, alert, interactive . . . and oriented." Huron Valley Rec., ECF No. 51-9, PageID.654-55. They also contain a statement from Andy's girlfriend, presumably Asha Taylor, that Andy had been displaying increasingly bizarre behavior and expressing suicidal ideations over the past year. Andy then was admitted to the hospital for treatment of a urinary tract infection. He remained "alert and oriented," and his cerebellar function was within normal limits. A CT scan was performed, which revealed a large mass in Andy's right frontal cortex. Andy's treating physician recommended that he consider a neurosurgery consult.

Andy went in and out of the hospital in the months that followed. He underwent a second brain surgery in October 2015, which was complicated by a brain infection. Nevertheless, Andy's medical records state that he remained oriented, and that his "[j]udgment and insight appear simple, but intact."

In April 2016, Asha Taylor took Andy to see a family physician, Dr. Thomas Barriger. She told the doctor that Andy's cognitive function had continued to decline, that he was not taking his medication or insulin, and that he was regularly experiencing urinary incontinence. Andy displayed even worse symptoms at a June appointment, where he exhibited fecal incontinence and a CT brain scan revealed multiple severe abnormalities. Dr. Barriger concluded that Andy "does not appear capable of taking care of himself or making any decisions regarding his own care" and was "mentally incompetent." Beaumont Recs., ECF No. 51-11, PageID.676.

At the physician's recommendation, Kirit Patel petitioned the Macomb County Probate Court to be appointed Andy's legal guardian. Dr. Michael Abramsky, a neuropsychologist, examined Andy in June 2016 and concluded that a guardianship was appropriate given the extent of Andy's brain damage. Relying on information provided by Kirit Patel, Dr. Abramsky opined that, barring traumatic injury, Andy's cognitive decline likely started years earlier. Kirit Patel was appointed as his father's guardian on August 22, 2016. Andy supported the appointment.

On September 21, 2016, Andy Patel signed a Durable Power of Attorney in Macomb County, Michigan naming Kirit Patel as Attorney-in-Fact. Andy also signed documents granting Kirit authority as Attorney in India on December 30, 2017.

C.  Competing Claims

Andy Patel died on July 26, 2020. On August 13, 2020, Protective sent Kirit Patel a letter informing him that Asha Taylor and Dhaval Taylor were the beneficiaries of Andy's Federal Kemper policy, consistent with Andy's 2015 beneficiaries change. Protective also sent Kirit Patel a letter informing him that Asha Taylor was the beneficiary under Andy's Empire General policy. In September and October 2020, Protective sent Kirit three requests to provide information on the

Federal Kemper policy, despite the fact that Kirit was never actually listed as a beneficiary under the policy (his mother and brother were).

On November 5, 2020, Asha and Dhaval Taylor individually submitted claimant's statements to Protective for their portions of Andy's Federal Kemper and Empire General policy proceeds. Protective apparently found those submissions to be defective because the Taylors had filled out the witness sections incorrectly. The following week, on November 12, 2020, Asha and Dhaval jointly submitted corrected claimant's statements for both policies. Protective acknowledged receipt of the corrected forms on November 17, 2020.

On November 16, 2020, Protective received a letter from Attorney Michael P. Kavanaugh on behalf of Kirit Patel requesting that Protective suspend disbursement of the life insurance funds anticipating a forthcoming lawsuit challenging Andy's capacity to change the beneficiaries of his life insurance policies. On November 25, 2020, Protective informed Dhaval Taylor that it had received competing claims on at least one of the policies.

Protective filed its complaint-in-interpleader on December 14, 2020, and amended the complaint on January 15, 2021 to add Shakri Patel as an interpleader defendant after discovering that she was not deceased. Protective unsuccessfully attempted to negotiate a stipulation with the defendants to allow it to pay the policy proceeds into the Court's registry and receive a "with prejudice" dismissal from the case. On June 1, 2021, Protective filed a motion for interpleader deposit, which the Court granted in part, and Protective deposited $1,143,711.06 in insurance proceeds and interest into the Court's registry on October 7, 2021. The deposit relieved Protective of any liability with respect to payment of the life insurance proceeds.

The Court directed the interpleader defendants and all other persons who claim an interest in the proceeds of the life insurance policies to file their claims in this matter. The Taylor

defendants filed a claim on October 12, 2021. ECF No. 45. The Patel defendants had already filed a similar claim, on April 27, 2021. On October 29, 2021, the Taylor defendants moved for summary judgment.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party bringing the motion first must explain why the record is so settled that no genuine issues of material fact exist by "identify[ing] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). To rebut that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The opposing party must base that rebuttal on specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Notably, however, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251-52).

## A. Federal Kemper Policy

The Taylor defendants argue that the July 2015 beneficiary designation for the Federal Kemper policy is controlling, entitling them each to a 50% death benefit. The Patel defendants believe that Andy Patel lacked the mental capacity to effectuate the July 2015 beneficiary change, thereby rendering the 2001 beneficiary designation controlling. There is evidence in the record that creates a question of fact on Andy Patel's mental capacity in July 2015 that precludes summary judgment in favor of the Taylor defendants.

Under Michigan law, the party challenging the beneficiary change designation bears the burden of proving that the policy holder lacked mental capacity at the time the change was made. *Chrysler Corp. v. Nohmer*, 319 Mich. 153, 156, 29 N.W.2d 149, 151 (1947). That is because a designation of beneficiaries is presumed valid. *See In re Mardigian Est.*, 312 Mich. App. 553, 565, 879 N.W.2d 313, 320 (2015) (stating rule for testators). "[T]he test to be applied in determining the mental competency of an insured at the time the insured attempts to effect a change of beneficiaries of a life insurance policy is whether the insured then had sufficient mental capacity to understand the business in which the insured was engaged, to know and understand the extent of the insured's property, how the insured wanted to dispose of it, and who are dependent upon the insured." *In re Est. of Erickson*, 202 Mich. App. 329, 332-33, 508 N.W.2d 181, 183 (1993) (citing *Harris v. Copeland*, 337 Mich. 30, 59 N.W.2d 70 (1953); *Grand Lodge, Ancient Order of United Workmen v. Brown*, 160 Mich. 437, 125 N.W. 400 (1910)). That is the same test — and the same rules apply — as in the case of a contested will. *Aetna Life Ins. Co. v. Yablonsky*, 157 F.

Supp. 90, 92 (E.D. Mich. 1957); *Mut. Life Ins. Co. of New York v. Hughes*, 292 Mich. 644, 650, 291 N.W. 39, 41 (1940); *see also* Mich. Comp. Laws § 700.2501(2).

The evidence that may be considered includes (1) the insured's "incompetency before and after the date of change of beneficiary," (2) the testimony of the attending physician, and (3) the "insured's physical state." *Yablonsky*, 157 F. Supp. at 93 (citations omitted). "A mentally incompetent person is one who is so affected mentally as to be deprived of sane and normal action." *In re Est. of Erickson*, 202 Mich. App. at 333, 508 N.W.2d at 183 (citing *Henderson v. Henderson*, 206 Mich. 36, 172 N.W. 623 (1919)).

The record in this case shows that Andy Patel had already undergone one brain surgery in 2013 and that new tumors and brain injuries were discovered days after he made the beneficiary change. "[C]apacity is judged as of the time of the execution of the instrument." *In re Powers' Est.*, 375 Mich. 150, 158, 134 N.W.2d 148, 152 (1965) (citing *In re Nickel's Estate*, 321 Mich. 519, 32 N.W.2d 733 (1948)) (emphasis added). But evidence of mental derangement or disorientation within a reasonable time before or after the date of the beneficiary change can support an inference of mental incapacity. *See, e.g.*, *Yablonsky*, 157 F. Supp. at 93 (finding incompetency where a physician determined the insured was suffering from mania before the contested beneficiary change, and there was evidence that he was delirious and disoriented in the days immediately prior). And at the summary judgment stage, all reasonable inferences must be drawn in favor of the nonmoving party, here the Patel defendants. *Alexander*, 576 F.3d at 557-58.

The Patel defendants point to evidence of Andy's behavior at the White Lake CVS on July 29, 2015, when he attempted to acquire drugs to commit suicide. His mental decline was corroborated by Asha Taylor's statement to the emergency physician that Andy's behavior had become increasingly bizarre over the prior year, by the emergency physicians who admitted him

- 10 -

to the hospital, by Andy's statement to said physicians that he was "crazy," and by Dr. Abramsky's 2016 evaluation.

Dr. Abramsky evaluated Andy in June 2016 and concluded that he was "severely impaired" mentally. After reviewing Andy's history, much of which came from family members including his son Kirit Patel, Dr. Abramsky opined that it was unlikely that Andy was able to make meaningful decisions since the onset of his brain tumors and first surgery in 2013, and his history "suggest[ed] a long deterioration." The Taylor defendants contend that Dr. Abramsky's testimony is insufficient to create a factual issue because he based much of his opinion on information that came from Kirit Patel, who was not close to Andy at the time. But the source of the history is not disqualifying here and merely provides an argument to attack the weight of the opinion, which is something for the factfinder to consider. That is not an argument that is pertinent at the summary judgment stage.

In addition, other factors that must be considered include Andy's physical illness, his eccentric and odd behavior (which is not contested), and personality and behavior changes. *See e.g.*, *In re Est. of Runyon*, No. 350595, 2020 WL 7413948, at *6 (Mich. Ct. App. Dec. 17, 2020); *In re Est. of Rokosky*, No. 341693, 2019 WL 575343, at *4-5 (Mich. Ct. App. Feb. 12, 2019) (citing *In re Mardigian Est.*, 312 Mich. App. 553, 565, 879 N.W.2d 313, 320 (2015)). That evidence, discussed above, further supports an inference of mental incapacity. The Taylor defendants point to Andy's ability to engage in other transactions with an attorney's help in the spring of 2015, and medical records from various hospitalizations after July 2015 reporting that Andy was oriented to time and place. However, that evidence does not overcome the competing inferences that arise from the contrary proof; it merely creates a material fact question. *See Rokosky*, 2019 WL 575343,

at *5 (holding that relying on a similar submission, "the probate court improperly weighed the evidence and made a credibility determination").

Because of these material fact disputes, the Taylor defendants are not entitled to summary judgment on the disposition of the proceeds of the Federal Kemper life insurance policy.

### B. Empire General Policy

That is not the case, however, for the Empire General insurance policy. The Patel defendants maintain that Kirit Patel and Sanjay Patel are each entitled to 50% of the proceeds from the Empire General policy because Andy's February 2011 beneficiary change request substantially complied with the policy's ambiguous requirements. The Taylor defendants maintain, however, that Asha Taylor is entitled to 100% of the proceeds of the Empire General Policy because the 2011 beneficiary change was invalid and never accepted. They have the better argument.

"It is well settled in Michigan that substantial compliance with change-of-beneficiary requirements is sufficient to effect a substitution." *Aetna Life Ins. Co. v. Brooks*, 96 Mich. App. 310, 315, 292 N.W.2d 532, 534 (1980) (citing *Harris v. Metropolitan Life Ins. Co.*, 330 Mich. 24, 28, 46 N.W.2d 448 (1951); *Aetna Life Ins. Co. v. Owens*, 318 Mich. 129, 138, 27 N.W.2d 607 (1947)). But that "compliance" is governed by the formal provisions of the insurance policy that indicate how a beneficiary may be changed. *Aetna Life Ins. Co. v. Parker*, 130 F. Supp. 97, 99-100 (E.D. Mich. 1955). And then the insured must do "all he can to change a beneficiary" on the policy. *Brooks*, 96 Mich. App. at 315, 292 N.W.2d at 534.

The Empire General policy required beneficiary changes to be made through "written request[s] *satisfactory to the Company*." Resp., ECF No. 51, PageID.611 (emphasis added). Andy Patel's 2011 beneficiaries change request was not satisfactory to Protective because it did not designate beneficiaries for 100% of policy proceeds. Protective could not accept the change form

because, according to the form's terms, doing so would cancel all previous designations, leaving 50% of the proceeds unallocated. Therefore, Andy's 2011 change request did not comply with the formal provisions of the insurance policy that indicate how a beneficiary may be changed. *See Parker*, 130 F. Supp. at 99-100.

The substantial compliance doctrine typically applies where the insurance company accepts a beneficiary change that was not made in strict compliance with its procedures, or when it should have accepted a change that, although unconventionally made, was technically in compliance. *See, e.g.*, *Brooks*, 96 Mich. App. at 316, 292 N.W.2d at 535 (finding that a beneficiary change was effectuated despite the insured using the wrong form, which the insurer received but failed to process); *Parker*, 130 F. Supp. at 101 (E.D. Mich. 1955) (finding effective an amendment to a beneficiary form filed after the insureds' death because the policy stated that changes were effective at the date of execution); *Harris v. Metro. Life Ins. Co.*, 330 Mich. 24, 27-28, 46 N.W.2d 448, 449 (1951) (finding that the insured did all he could to execute a proper beneficiary change instrument before he died); *Quist v. Western & Southern Life Ins. Co.*, 219 Mich. 406, 409, 189 N.W. 49, 51 (1922) (finding that a beneficiary change was effectuated after the insurance company waived the required formalities).

Neither dynamic was at play here. Protective did not accept Andy's change request and explained to Andy why it could not do so. The insurer promptly sent him this notice as well as a new beneficiary change form. Andy did not return that form, and for nine years he made no other effort to submit a valid change request. Thus, Andy did not do "all in his power to effect the change in the manner prescribed in the policy," and the substantial compliance doctrine cannot rescue his attempt. *Harris*, 330 Mich. at 27, 46 N.W.2d at 449; *see also Brooks*, 96 Mich. App. at 315, 292 N.W.2d at 534.

Andy's original beneficiary designation entitling Asha Taylor to 100% of the Empire General proceeds therefore controls.

III.

Fact questions preclude summary judgment on the question of the validity of the 2015 beneficiary change on the Federal Kemper policy. However, the Taylor defendants are entitled to partial summary judgment on the allocation of the Empire General policy proceeds.

Accordingly, it is **ORDERED** that the motion for summary judgment by the Taylor defendants (ECF No. 49) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that defendant Asha Taylor is determined to be the sole beneficiary of the Empire General life insurance policy number E00239924, and the policy proceeds will be distributed to her upon entry of final judgment in the case. The motion is **DENIED** in all other respects.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: July 13, 2022