UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROTECTIVE LIFE INSURANCE
COMPANY,

            Interpleader Plaintiff,           Case Number 20-13289
v.                                                             Honorable David M. Lawson

KIRIT PATEL, SANJAY PATEL, ASHA
TAYLOR, DHAVAL TAYLOR, and
SHAKRI TAYLOR,

            Interpleader Defendants.

And

KIRIT PATEL, SANJAY PATEL, and
SHAKRI PATEL,

            Cross-Plaintiffs,

v.

ASHA TAYLOR and DHAVAL TAYLOR,

            Cross-Defendants.

_____/

## OPINION AND ORDER GRANTING INTERPLEADER PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

This matter is before the Court on Protective Life Insurance Company's request for attorney's fees incurred in litigation over the proceeds of two insurance policies on the life of Arvindbhai (Andy) G. Patel. Protective Life, the interpleader plaintiff, says that it attempted to negotiate an agreement among the competing parties to allow it to pay the policy proceeds into court and then withdraw from the case. Although the Patel defendants ultimately agreed, the Taylor defendants did not. Protective Life then proceeded with the litigation, eventually moving for the relief it had sought through negotiation. The Court granted the motion and allowed

Protective Life to be dismissed from the case after paying the policy proceeds into the Court's Registry. Protective Life seeks attorney's fees based on the Taylor defendants' opposition, which it characterizes as unreasonable. The Court has discretion in interpleader cases to award attorney's fees to the stakeholder as an equitable remedy. Protective Life has shown that it is appropriate for the Court to allow it to recover its costs and attorney's fees in a reasonable amount. The Court, therefore, will grant the motion.

I.

Andy Patel's ex-wife and children, Shakri, Kirit, and Sanjay Patel (the Patel defendants), and partner and son, Asha and Dhaval Taylor (the Taylor defendants), all claim to be rightfully entitled to some or all of the proceeds of two insurance policies on Andy's life. Protective Life was obliged to pay out the proceeds from both policies, but due to the dispute among the defendants it could not determine the proper beneficiaries. So Protective Life filed a complaint-in-interpleader on December 14, 2020. It filed a motion to deposit the proceeds into the Court's registry on June 1, 2020. The Court granted the motion in part, and Protective Life deposited $1,143,711.06 in insurance proceeds and interest into the Court's registry on October 7, 2021. The deposit relieved Protective Life of any liability with respect to payment of the life insurance proceeds.

Protective Life states that it incurred significant attorney's fees as a result of the defendants' competing claims to the insurance proceeds. At the beginning of the litigation,Protective Life unsuccessfully proposed to the defendants a stipulation to dismiss it from the case after it paid the policy proceeds to court, award it $5,000 in attorney's fees, and have the Court resolve the interpleader defendants' claims. The defendants were slow to respond to this proposal and ultimately refused until May 2021, when the Patel defendants consented to Protective's recovery of fees and dismissal with prejudice. However, the Taylor defendants

continued to refuse to accept the proposal, demanding that they would only do so if Protective Life paid them $200,000 and consented to the dismissal of the case without prejudice. Alternatively, the Taylor defendants demanded that Protective Life pay them $175,000 and waive its attorney's fees. They also remained adamant that Protective Life was liable for breach of contract and negligence for mishandling the claims procedure, allegations the Court ultimately determined were without merit. ECF No. 32. Protective Life therefore continued to incur "substantial" fees as it attempted to negotiate with the interpleader defendants, participated in conferences, and sought to be discharged from the action. When Protective Life filed its motion to disburse the funds in June 2021, it requested fees totaling $16,456.75. Protective Life again increased its request in its reply brief and now asks for "$22,141.75, which equates to less than 2% of the insurance proceeds to be deposited with the Court" and "does not account for the total fees expended by Protective." Supp. Brief, ECF No. 33, PageID.307. Protective Life does not seek to recoup any fees incurred after June 22, 2021.

Protective Life retained two law firms in this matter. Its legal team from the primary firm, Bodman PLC, is comprised mainly of Michelle Thurber Czapski and Alexandra C. Markel. Czapski is chairperson of Bodman's Insurance Practice and Litigation Practice Groups and has 29 years' experience litigating insurance cases. She charged an hourly rate of $490 and billed around 16 hours on the file between December 2020 and June 2021. Markel has four years experience as a lawyer in areas that include insurance litigation. She charged $260 per hour on this matter and billed more than 18 hours. The second firm, Maynard, Cooper & Gale, P.C., "routinely serves as Protective's national counsel." Third-year associate Mary Caroline Wynn primarily handled the case for Maynard Cooper, billing more than 43 hours since December 2020. Wynn specializes in insurance litigation and charged $202 an hour, below her usual hourly rate. To minimize fees, she

says that she performed the majority of the two firms' legal research and briefing. Maynard Cooper shareholder A. Feinberg and staff attorney C. Collins, and Bodman paralegal Matthew Chambers, also billed hours in this matter. However, no one from the Maynard, Cooper firm ever appeared in the case.

The firms itemized their fees as follows:

| Description of Services | Hours | Total Fees |
|---|---|---|
| Initial file review and drafting the case initiating pleadings; service of process; amendment of complaint. | 21.2 | $5,365.00 |
| Review of responsive pleadings; communications with counsel for interpleader defendants; preparation of stipulation for interpleader. | 6.7 | $1,955.20 |
| Communications with interpleader defendants' counsel regarding stipulation for interpleader; preparation of case management statement. | 5.5 | $1,446.00 |
| Preparation of motion for interpleader deposit, accompanying declaration in support of fee request, and proposed order; preparation for and appearance at status conference; preparation of initial disclosures; further communications regarding stipulation for deposit of proceeds. | 46.5 | $11,408.20 |
| Review of oppositions to motion for interpleader deposit; preparation of reply in support of motion for interpleader deposit; preparation of policy file and responses to interpleader defendants' discovery requests. | 28.4 | $7,941.60 |
| **Total Fees Billed as of July 31, 2021** | **73.1** | **$28,116.00** |

*Id.* at PageID.310. Notably, this chart appears to contain an error, in that the sum of the hours billed for each category of service is 108.3, not 73.1.

As noted above, Protective Life first asked the Court for an attorney's fee award in its June 1, 2021 motion for the deposit of proceeds. The Court granted the motion in part on September 7, 2021, ordering Protective Life to pay the insurance proceeds into the Court's registry but directing it to furnish additional information to substantiate its attorney's fee award request. Protective filed a supplemental brief in support of its request on September 21, 2021, and additional exhibits on

October 1, 2021. On October 12, 2021, the Taylor defendants filed a supplemental brief in opposition to Protective's request, to which Protective Life replied.

I.

Although neither Federal Rule of Civil Procedure 22 nor the interpleader statute, 28 U.S.C. § 2361, "contains an express reference to costs or attorney's fees," "[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so." 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1719 (3d ed. 2021). A court may award an interpleading party attorney's fees and costs when the party "is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Holmes v. Artists Rights Enf't. Corp. (AREC)*, 148 F. App'x 252, 259 (6th Cir. 2005) (quoting *Septembertide Publ'g v. Stein and Day*, 884 F.2d 675 (2d Cir. 1989)). "The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate." *Ibid.*

On the other hand, it has been said that "attorneys' fees are not warranted . . . when a stakeholder's interpleader claim arises out of the normal course of business." *In re Mandalay Shores Coop. Hous. Ass'n Inc.*, 21 F.3d 380, 383-84 (11th Cir. 1994); *see also Unum Life Ins. Co. of Am. v. Kelling*, 170 F. Supp. 2d 792, 795 (M.D. Tenn. 2001) ("Competing claims arise during the normal course of [insurance] business and the cost of doing such business should not be transferred to the insured."); *Allstate Life Ins. Co. v. Shaw*, No. 15-11761, 2016 WL 1640461, at *5–6 (E.D. Mich. Apr. 26, 2016) (collecting cases). The reasons for disallowing attorney's fees (an equitable remedy) include the idea that the task of dealing with competing claims to insurance benefits is a foreseeable risk for insurance companies and an anticipated cost of doing business;

an insurance company is an interested stakeholder in a contest over policy proceeds, and the immunity conferred by an interpleader order is remedy enough; and it is inequitable to deplete the policy proceeds, which an interpleader action is intended to preserve and allocate. *Kelling*, 170 F. Supp. 2d at 794-95.

Protective Life argues that $22,141.75 is a reasonable attorney's fee award because it amounts to only a small percentage of the insurance proceeds deposited with the Court and represents fair compensation for the unnecessary litigation the interpleader defendants caused in this case. Protective Life says that the fees were accrued from its prolonged negotiations with the interpleader defendants, conferences with the Court, and preparations for its Motion for Deposit and Discharge, most of which could have been avoided had the defendants stipulated to Protective Life depositing the insurance proceeds and being discharged from the case.

The Patel defendants do not dispute Protective Life's fee request in principle, but they maintain that the requested amount —about $16,000 at the time these defendants responded to the motion — was unreasonable. They contend that the matter is straightforward, that hardly any discovery had been conducted to date, and that Protective Life is being represented by two law firms without good reason.

The Taylor defendants argue that Protective Life's requested attorney's fees are excessive. They maintain that Protective Life's legal team spent too many hours processing competing claims that it precipitated. And they contend that Protective Life actually was the party that refused to interplead the insurance proceeds, alleging that if Protective Life had merely agreed from the start to pay 12 percent interest on the funds, then the Taylor defendants would have stipulated to dismiss Protective Life from the case. That argument is questionable, since there is no record that the

Taylor defendants ever agreed to dismiss the case *with* prejudice. And Protective Life never contested the idea that it owed interest on the policy proceeds.

Protective Life satisfies the criteria for recovering its costs and some amount of attorney's fees as a stakeholder to this interpleader action. *Holmes*, 148 F. App'x at 259. Protective Life is a disinterested party, has conceded liability, has deposited the disputed funds into the Court's registry, and has sought and received a discharge from liability. It is true, as noted earlier, that courts may limit or deny a stakeholder's request for attorney's fees if it finds that its interpleader claim arose out of the normal course of business. *In re Mandalay Shores Coop. Hous. Ass'n Inc.*, 21 F.3d at 383-84; *Kelling*, 170 F. Supp. 2d at 795. This is especially true in the case of insurance companies, a view commonly espoused in this district. *See, e.g.*, *Prudential Ins. Co. of Am. v. Coopwood*, No. 17-14145, 2018 WL 8807139, at *3 (E.D. Mich. July 13, 2018) (Tarnow, J.) (denying fees); *Fid. Life Ass'n v. Amstutz*, No. 16-CV-12618, 2016 WL 6892081, at *3 (E.D. Mich. Nov. 22, 2016) (Steeh, J.) (same); *Allstate Life Ins. Co. v. Shaw*, No. 15-11761, 2016 WL 1640461, at *6 (E.D. Mich. Apr. 26, 2016) (Parker, J.) (limiting fees); *Unicare Life & Health Ins. Co. v. Harris*, No. 06-13569, 2007 WL 551596, at *1 (E.D. Mich. Feb. 21, 2007) (Cleland, J.) (same); *Am. Int'l Life Assur. Co. of New York v. Burger*, No. 06-12067, 2006 WL 3497287, at *4 (E.D. Mich. Dec. 1, 2006) (Hood, J.) (denying fees).

Here, though, Protective Life's involvement in this litigation well exceeded the norm. Instead, it was faced with claims that challenged its claims processing procedures and was met with a demand from the Taylor defendants for payment above its contractual liability. According to the history of the negotiations, that payment would not have resulted in a "with prejudice" dismissal. Protective Life came to court reasonably expecting to pay the insurance proceeds into the registry and to let the competitors fight among themselves over the proper division. Instead, it

was faced with claims by the Taylor defendants against it — claims ultimately deemed meritless. Perhaps Protective Life's initial proposal for a $5,000 attorney fee was not itself reasonable, since at that stage of the case it was operating within the ordinary course of a life insurance company's business. But the defendants never challenged that aspect of the proposal at that time, and Protective Life was left with no alternative than to engage in protracted litigation. Under the circumstances of this case, equity favors an award of attorney's fees and costs to the insurance company.

The amount of the fee award, however, must be reasonable and consistent with equitable principles. Typically, the reasonableness of an attorney's fee request is measured by the lodestar method. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). If "documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433 (1983). Additionally, the Court must "exclude . . . hours that were not reasonably expended." *Id.* at 434.

A reasonable rate for the purpose of the lodestar calculation is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Husted*, 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Sources of information include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id*. at 716 (internal quotation omitted). A summary report of billing rates from the State Bar of

Michigan indicates that Markel's $260 rate is near the median for senior associates, and that Czapski's $490 hourly rate falls within the range charged by equity partners, albeit above the 75th percentile. *Economics of Law Practice 2020*, State Bar of Michigan, ECF No. 33-3, PageID.329.

Protective Life's counsel have provided an itemized documentation of their hours. Invoices, ECF No. 39. The defendants do not object to particular time entries, alleging only that the overall time expended by Protective's counsel was excessive. Once a prevailing party provides "particularized" billing records, however, "conclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error." *Imwalle v. Reliance Med. Prod.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). Here, the invoices Protective has furnished are "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle,* 515 F.3d at 553; *see also Hensley*, 461 U.S. at 433, 437 (1983).

The defendants reasonably question why Protective Life needed to engage two law firms in this case. Although "multiple-lawyer litigation is common and not inherently unreasonable," *Husted*, 831 F.3d at 704, the record does not contain a sufficient explanation for the need to engage two separate law *firms*, one of which never formally appeared in the case through any of its lawyers. And there is no reasonable basis to conclude that the Bodman firm, a very capable organization, needed to farm out its work to lawyers in Alabama. When assessing hours, courts should evaluate whether a case is "overstaffed." *Hensley*, 461 U.S. at 434 (1983). And courts

generally will not award fees where one firm's role was largely redundant to the other. *See, e.g.*, *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 945 (E.D. Mich. 2005) (Duggan, J.) (limiting recovery of fees incurred by local counsel who mostly reviewed and received materials); *Cernelle v. Graminex*, L.L.C., 539 F. Supp. 3d 728, 742 (E.D. Mich. May 12, 2021) (Lawson, J.) (same). Counsels' invoices suggests that both the Maynard Cooper lawyers and the Bodman lawyers participated in legal drafting and research in this matter, although Bodman was primarily responsible for managing Protective Life's legal strategy and communications with the client, counsel for the defendants, and Court. And Protective Life's briefing makes it difficult for the Court to identify line-item expenses it believes Protective Life incurred "merely because conflicting claims to proceeds [arose] during the normal course of business," *Kelling*, 170 F. Supp. 2d at 794, such as the first three categories of services Protective Life included in the summary chart.

As noted above, Protective Life should not expect to recover attorney's fees for legal work that is a normal part of an insurance company's business. The justifications for excluding insurance companies from the general rule regarding attorney's fees informs the Court's analysis of Protective Life's fee request, even though Protective Life incurred fees due to unnecessarily prolonged litigation. That was the case in *Allstate Life Insurance Company v. Shaw*. There, the court found that all three reasons for disallowing an interpleading stakeholder attorney's fees counseled against making an award, but nevertheless determined that the life insurance company equitably was entitled to some fees to compensate it for having to defend against a frivolous counter-complaint. 2016 WL 1640461 at *6. So it is here. Protective Life's award will be limited to only those fees reasonably incurred outside of its ordinary course of business — that is, to those unnecessary expenses Protective Life was forced to incur to obtain what should have been a routine

remedy. *See, e.g.*, *Fox*, 563 U.S. at 838; *Hensley*, 461 U.S. at 436-37; *Holmes*, 148 F. App'x at 257.

Those attorney's fees consist of the work the Bodman firm performed after the negotiations for an interpleader stipulation broke down, which mainly was due to the Taylor defendants' insistence on unreasonable concessions that were founded on a meritless legal theory. Based on the billing records, the amount of $13,500 is equitable and will fairly compensate Protective Life for the additional legal work it had to incur. Protective Life encountered difficulties depositing the policy proceeds and being discharged from the case mainly because both the Patel and Taylor defendants refused the initial stipulation. Although the Patel defendants later relented (except for disputing the amount of the fee demand), the Taylor defendants dragged out the process by insisting without merit that Protective Life negligently processed their claims to at least one of the insurance policies. A significant amount of the hours Protective Life's counsel billed in this matter came after its efforts to stipulate a deposit failed. Because the Taylor defendants were the main cause of fees Protective Life incurred outside the normal course of its business, those defendants will bear the major portion of the expenses, to come from their share of the policy proceeds.

Protective Life also seeks reimbursement of its costs, but it would have had to incur the filing and claim-processing expenses regardless of the defendants' position on its request for a dismissal with prejudice.

After the motion for fees was filed, the interpleader defendants filed a stipulation stating that the Taylor defendants would be responsible for any fee award to Protective Life. Therefore, the Court will allocate from the distribution of the fund in the Court's Registry that amount from the Taylor defendants' share of the policy proceeds.

III.

Equity favors Protective Life's request for attorney's fees in a reasonable amount. And the fees should be, and are, allocated among the interpleader defendants based on their litigation conduct that caused the insurance company to incur costs beyond what it should have expected as an ordinary part of its claims processing business.

Accordingly, it is **ORDERED** that the motion by interpleader plaintiff Protective Life Insurance Company for attorney's fees (ECF No. 19, 33) is **GRANTED IN PART**.

It is further **ORDERED** that Protective Life is awarded the sum of $13,500 in full satisfaction of its claim for attorney's fees in this case.

It is further **ORDERED** that the fees shall be paid by a distribution from the policy proceeds that have been paid into the Court's Registry, allocating $13,500 from that portion of the fund otherwise to be distributed to the Taylor defendants.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   October 28, 2022